IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NAKIYA MORAN,

                Plaintiff,

v.

Calumet City, Calumet City Officer Mitchell Growe, Calumet City Officer Kevin Rapacz, Calumet City CST Mario Glumac.

                Defendants.

Case No.

**Complaint at Law**

Now Comes the Plaintiff, NAKIYA MORAN, by and through his attorneys, BURKE WISE MORRISSEY & KAVENY LLC, and complaining of Defendants CALUMET CITY, CALUMET CITY OFFICER MITCHELL GROWE, CALUMET CITY OFFICER KEVIN RAPACZ, and CALUMET CITY CST MARIO GLUMAC, alleges as follows:

**Jurisdiction and Venue**

1. This is an action for damages brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution and under the laws of the State of Illinois.

2. This court has original jurisdiction pursuant to 28 U.S.C. §§§ 1331 and 1343 over Plaintiff's cause of action arising under the Constitution of the United States pursuant to 42 U.S.C. § 1983.

3. This court has supplemental jurisdiction of Plaintiff's causes of action arising under the Illinois state law pursuant to 28 U.S.C. § 1367.

4. Venue is proper under 28 U.S.C. § 1391(b), in that all of the claims and events giving rise to this action occurred in this district.

**Parties**

5. At all relevant times, Plaintiff Naikya Moran was a seventeen year old resident of the Village of Lansing, County of Cook and the State of Illinois.

6. At all relevant times, Defendant Calumet City, was a municipal corporation duly incorporated under the laws of the State of Illinois, and was the employer and principal of Defendant Officer Mitchell Growe ("Officer Growe"), Defendant Officer Kevin Rapacz ("Officer Rapacz"), and Defendant Mario Glumac ("CST Glumac).

7. At all relevant times, Defendant Calumet City is a municipal corporation maintaining, as a division of said Municipal Corporation, a certain police department, commonly referred to as the Calumet City Police Department ("CCPD").

8. Calumet City is responsible under *respondeat superior* for the actions of its agents, including, but not limited to Defendant Growe, Defendant Rapacz, and Defendant Glumac's involvement in the detainment, arrest and prosecution of Plaintiff.

9. At all relevant times referenced herein, Defendant Officer Mitchell Growe was employed by Calumet City as a sworn police officer. He is being sued in his individual capacity. At the time of the incident in this complaint, Defendant Officer Growe was engaged in the conduct complained of while acting within the scope of his employment and under the color of state law.

10. At all relevant times referenced herein, Defendant Officer Kevin Rapacz was employed by Calumet City as a sworn police officer. He is being sued in his individual capacity. At the time of the incident in this complaint, Defendant Officer Rapacz was engaged in the conduct complained of while acting within the scope of his employment and under the color of state law.

11. At all relevant times referenced herein, Defendant Criminal Evidence Technician ("CST") Mario Glumac was employed by Calumet City as an evidence technician. He is being sued in his individual capacity. At the time of the incident in this complaint, Defendant CST Glumac was

engaged in the conduct complained of while acting within the scope of his employment and under the color of state law

## Facts Applicable to All Counts

### Incident

12. On August 22, 2006, an unknown assailant fired approximately nine (9mm) Luger bullets at Tomas Rostro, Eduardo Rostro, Edwin Rostro, Flora Rostro, Yadira Rostro and Desiree Dolata. The bullets struck and injured Tomas, Yadira and Desiree.

**Trial Testimony**

13. On August 19, 2009, Plaintiff's case proceeded to a jury trial at the Markham Courthouse in Cook County, Illinois. The jury trial was presided over by the Honorable Judge Michelle M. Simmons.

14. The trial testimony revealed that a shooting occurred outside of the Rostro family home at 1451 Kenilworth Drive, Calumet City, Illinois, at approximately 9:00 p.m. on August 22, 2006.

15. The Rostro home was located on the southwest corner of the intersection of Kenilworth Drive and 164th Street. Kenilworth is a roadway that runs in a northerly and southerly direction, while 164th street is a roadway that runs in an easterly and westerly direction.

16. Located behind the Rostro home was a garage and driveway that faced north towards 164th Street. Immediately to the east of the garage and driveway was an alley that runs in a northerly and southerly direction.

17. Immediately across the street from the Rostro's garage was a neighbor's garage which faced south towards 164th street. The shooter was allegedly hiding behind a large bush located immediately east of the neighbor's garage

18. At that time of the evening there was no natural light. The only light in the immediate area was a street light located near the Rostro's garage and a light attached to the neighbor's garage immediately across the street.

19. At the time of the shooting, there were five members of the Rostro family present including the father Tomas Rostro, the mother Flora Rostro, the eighteen year old son Eduardo Rostro, the sixteen year old daughter Yadira Rostro, and the fifteen year old son Edwin Rostro. Also present was Desiree Dolata, a fourteen year old friend of Yadira.

20. Tomas Rostro, Eduardo Rostro, Edwin Rostro and Yadira Rostro were all members of the Latin Kings Street Gang.

21. Tomas, Flora and Edwin were standing on the driver side of a vehicle parked in their driveway. Yadira and Desiree were standing several feet to the east of the driveway.

22. Eduardo was standing on the north side of Rostro house approximately 40 feet east of their driveway. Eduardo was also behind two large trees that partially obstructed his northbound view of the street.

23. Once the gunshots were fired, Tomas, Flora, Edwin and Yadira dove to the ground for cover. Tomas then got to his feet and began walking towards the shooter. At that time, Tomas was unable to identify the shooter despite being approximately 25 feet away and having an unobstructed view of his face. Flora and Edwin were also unable to identify the shooter.

24. Yadira was facing north when the shots were fired but did not see the shooter at that time. Instead, she began running westbound when she was struck by a bullet in the buttocks and fell to the ground. As Yadira was laying on the ground wounded and facing west, she allegedly looked back for a matter of seconds and saw the Plaintiff with a gun.

25. Eduardo was facing north when he allegedly saw Plaintiff hiding behind a bush as he "peep[ed] his head" out and began firing a gun. In response, Eduardo immediately began running westbound and away from the shooter and "did not look back."

26. Eduardo saw a compact car with a loud muffler and four occupants driving around his home approximately thirty (30) minutes prior to the shooting. Eduardo also heard the same car with the loud muffler speed away from the scene immediately after the shooting.

27. Eduardo admitted that he did not see Plaintiff in that car any time before or after the shooting.

**Alibi Witnesses**

28. Alibi witnesses Amber Mendoza and Elizabeth Outlaw provided trial testimony that on August 22nd Plaintiff came to Amber's house located at 1492 Wentworth Avenue in Calumet City at approximately 12:00 p.m.

29. Amber and Elizabeth further testified that Plaintiff remained with them at Amber's house until approximately 9:00 p.m.

30. At that time, Amber's mother Gayle Patterson drove the two girls and Plaintiff to his home located in Lansing, Illinois which was a 10 to 15 minute drive away. As result, Amber and Elizabeth provided sworn testimony that it was physically impossible for Plaintiff to be firing a weapon at the Rostro family at approximately 9:00 p.m.

31. Kimothy Hill testified that he was friends with Eduardo and had been to the Rostro home approximately one hundred (100) times prior the shooting. On August 22, 2006, Kimothy was playing basketball with Eduardo and their mutual friends in the Rostro driveway.

5

32. At approximately 9:00 p.m., Kimothy left the Rostro house and began walking westbound on 164th Street. Kimothy then observed a dark colored compact car with a loud muffler traveling eastbound on 164th street.

33. The car slowed at a stop sign and two of the occupants flashed a "Two-Six" gang sign at him. Kimothy saw the faces of all four occupants and Plaintiff was not one of them. Shortly thereafter, Kimothy heard gunshots and the car's loud muffler again.

34. On August 22, 2006, at approximately 9:30 p.m. Defendant Glumac arrived on the scene and recovered nine (9) mm Luger cartridge casings from the mouth of the alley directly across from the Rostro driveway.

35. On August 22, 2006 at approximately 9:30 p.m. Defendant Growe and Defendant Rapacz arrived on the scene and questioned various witnesses. Defendant Growe and Defendant Rapacz created a false report(s) claiming that Yadira Rostro identified Plaintiff as the shooter at the scene.

36. On August 22, 2006 at approximately 9:30 p.m., Defendant Growe and Defendant Rapacz created a false report(s) claiming that Eduardo Rostro identified Plaintiff as the shooter at the scene.

37. On August 24, 2006, Defendant Growe and Defendant Rapacz proceeded to St. James Hospital in Olympia Fields, Illinois. At that time, the Defendants further questioned Yadira and Eduardo regarding the shooting.

38. Defendant Growe and Defendant Rapacz subjected Yadira to a photo array lineup where they coercively and improperly suggested that Plaintiff was the shooter.

39. Defendant Growe and Defendant Rapacz subjected Eduardo to a photo array lineup where they purposely and improperly suggested that Plaintiff was the shooter.

40. On August 24, 2006, Defendant Growe and Defendant Rapacz proceeded to Plaintiff's father's home located at 17952 Rose Street Lansing, Illinois. Defendants arrested Plaintiff and he was charged with multiple counts of attempt murder and aggravated battery with a firearm.

41. On August 25, 2006, Plaintiff provided a written statement to a Cook County Assistant State's attorney indicating that he was at his father's house in Lancing by 9:00 p.m., and denied shooting anyone. Plaintiff maintained his innocence over the next eleven (11) years of incarceration.

42. On August 24, 2009, Plaintiff was convicted by a jury on all counts. On December 7, 2009, he was sentenced to 62 years in the Illinois Department of Correction.

**October 22, 2006 shooting**

43. On October 22, 2006, Hammond Police Department ("HPD") officers were assigned to respond to a 911 dispatch of "shots fired" in the area of 1329 Calumet Avenue in Hammond, Indiana. Upon arrival, the officers observed the victim Juan Macias to be shot and wounded. The victim informed the officers that he was a member of the Latin Kings gang.

44. HPD officers spoke to a witness on the scene who physically described the shooter and stated that he entered an "older boxy style two door" vehicle. HPD officers recovered five (5) 9MM Luger cartridge cases from the scene of the shooting.

45. On October 26, 2006, Chicago Police Officers were assigned to respond to a 911 dispatch of "shots fired" in the area of 10700 S. State Line Road, Chicago, Illinois. Upon arrival, the officers curbed a vehicle which included Nicholas Chavez in the front-passenger seat.

46. As they approached the vehicle, CPD officers observed Chavez attempt to conceal a 9mm semiautomatic pistol. Chavez admitted he was a Latin Dragon and that they had just finished shooting at rival Latin King Gang members.

7

47. Chavez was arrested and charged with felony Unlawful Use of a Weapon. The CPD officers subsequently submitted the handgun to the Illinois State Police ("ISP") Forensic Science Laboratory to determine if the weapon ballistically matched bullets and/or cartridge casings used in other shootings.

48. At the time of his arrest, Chavez was a eighteen year old Hispanic male with short black hair who was 5'7 tall and weighed 155 lbs. At the time of his arrest, Plaintiff was a seventeen year old Hispanic male with short black hair who was 5'9 and weighed 165 lbs. The booking photographs of Chaves and Plaintiff indicate a striking resemblance between the two teenagers.

**Illinois State Police Testing**

49. On January 13, 2009, Forensic Scientist Leah C. Kane informed Defendant Glumac that based on ballistic testing, the cartridge cases recovered on August 22, 2006 were a possible forensic match to the handgun recovered during the arrest of Nicholas Chavez on October 26, 2006. Forensic Scientist Kane requested that Defendant Glumac resubmit the cartridge cases for further analysis.

50. Over the next several months Forensic Scientist Kane contacted Defendant Glumac on several occasions requesting that he comply by re-submitting the cartridge cases for further analysis.

51. On April 15, 2009, Defendant Glumac finally complied with Forensic Scientist's repeated requests and re-submitted the cartridge cases to the ISP forensic laboratory for further analysis.

52. On May 11, 2009, ISP Forensic Scientist Jeffrey Parise contacted Cook County Assistant State's Attorney ("ASA") Cordelia Coppleson who was assigned to the case and eventually acted as the lead prosecutor at Plaintiff's trial. Forensic Scientist Parise informed ASA Coppleson that

8

the cartridge cases recovered on August 22, 2006 were likely forensically matched to the handgun recovered during the arrest of Nicholas Chaves on October 26, 2006.

53. On May 19, 2009, Forensic Scientist Kane again contacted ASA Cordelia Coppleson and confirmed that the cartridge cases recovered on August 22, 2006 forensically matched the handgun recovered during the arrest of Nicholas Chaves on October 26, 2006.

54. On May 20, 2009, Forensic Scientist Kane sent ASA Coppleson twenty-eight (28) pages of ISP forensic reports via facsimile. Forensic Scientist Kane sent ASA Coppleson additional supplemental reports and "conversation sheets" confirming that she contacted ASA Coppleson as detailed above.

55. On May 22, 2009, Forensic Scientist Kane once again informed Defendant Glumac that the cartridge cases recovered on August 22, 2006 forensically matched the handgun recovered during the arrest of Nicholas Chaves on October 26, 2006. At that time, Defendant requested that Forensic Scientist Kane provide him a complete set of the laboratory reports which she sent via facsimile on June 9, 2009.

56. Approximately three months prior to Plaintiff's jury trial, ASA Coppleson was aware that ISP forensic testing had confirmed that the cartridge casings recovered on August 22, 2006 were a ballistic match to the handgun fired on October 22, 2006, and retrieved from Nicholas Chavez on October 26, 2006.

57. Prior to trial, ASA Coppleson never disclosed to Plaintiff or his attorney the existence of these reports or laboratory results. ASA Coppleson clearly violated Plaintiff's due process rights to a fair trial by deliberately withholding exculpatory evidence in violation of *Brady v. Maryland,* 373 U.S. 83 (1963).

58. Approximately three months prior to Plaintiff's jury trial, Defendant Glumac was aware that ISP forensic testing had confirmed that the cartridge casings recovered on August 22, 2006 were a ballistic match to the handgun fired on October 22, 2006, and retrieved from Nicholas Chavez on October 26, 2006.

59. Prior to trial, Defendant Glumac never disclosed to Plaintiff or his attorney the existence of these reports or laboratory results. Defendant Glumac clearly violated Plaintiff's due process rights to a fair trial by deliberately withholding exculpatory evidence in violation of *Brady v. Maryland,* 373 U.S. 83 (1963).

60. At some time prior to testifying at Plaintiff's jury trial on August 19, 2006, Defendant Growe and Defendant Rapacz were aware that the ISP forensic testing had confirmed that the cartridge casings recovered on August 22, 2006 were a ballistic match to the handgun fired on October 22, 2006, and retrieved from Nicholas Chavez on October 26, 2006.

61. Defendant Growe and Defendant Rapacz clearly violated Plaintiff's due process rights to a fair trial by deliberately withholding exculpatory evidence in violation of *Brady v. Maryland,* 373 U.S. 83 (1963).

**Post-Conviction**

62. On November 10, 2010, ASA Coppleson wrote a letter to State Appellate Defender Alan Goldberg admitting that there were ISP forensic reports confirming that the cartridge casings recovered on August 22, 2006 were a ballistic match to the handgun fired on October 22, 2006, and retrieved from Nicholas Chavez on October 26, 2006. ASA Coppleson's letter came approximately eighteen (18) months after she was made aware for the ISP forensic reports.

63. In the letter, ASA Coppleson falsely stated that she was first informed of the ISP forensic results in October 2010. ASA Coppleson went on to admit the documents were relevant to

10

Plaintiff's case and "pursuant to my ongoing ethical obligations I feel this information should be tendered to you as soon as possible."

64. On February 18, 2013, the Illinois Appellate Court affirmed Plaintiff's conviction. Plaintiff's appeal and the subsequent appellate decision did not address his claim that Defendants violated his right to a fair trial by deliberately withholding exculpatory evidence in violation of *Brady v. Maryland,* 373 U.S. 83 (1963).

65. On March 11, 2013, Plaintiff filed his Petition for Post-Conviction Relief requesting a new trial based on Defendant Growe, Defendant Rapacz and Defendant Glumac purposely withholding exculpatory evidence in violation of *Brady v. Maryland,* 373 U.S. 83 (1963).

66. On April 24, 2015, the Honorable Judge Simmons presided over Plaintiff's Post-Conviction hearing. At the hearing, ASA Coppleson falsely testified that she was first informed of the ISP forensic results in October 2010, despite clear ISP and Calumet City Police Department documentation confirming that she was informed of the results by May 2009.

67. At the hearing, Defendant Glumac admitted that he received a telephone call from Forensic Scientist Kane on May 22, 2009 informing him of the ISP forensic results. Defendant Glumac further admitted that he received the relevant ISP reports on June 9, 2006 and failed to tender those exculpatory reports to Plaintiff prior to trial.

68. At the hearing, Defendant Glumac falsely testified that he did not reveal the results of these reports to ASA Coppleson, Detective Growe or Detective Rapacz.

69. On June 26, 2015, Judge Simmon's granted Plaintiff's Post-Conviction Petition finding that Defendant Glumac did withhold exculpatory evidence – namely the ISP forensic reports – warranting a new trial.

**New Trial**

70. On November 28-29, 2016, Judge Simmons presided over Plaintiff's retrial. The Cook County State's Attorney's Office called Tomas Rostro, Eduardo Rostro, Yadira Rostro, and Defendant Rapacz to testify.

71. In Plaintiff's case, he called Kimothy Hall, Amber Mendoza and Plaintiff's father William Moran to testify.

72. On February 17, 2017, Judge Simmons found Plaintiff not guilty of all charges. In her ruling, Judge Simmons noted that Eduardo Rostro suffered "grave impeachment" and found that his "credibility is tainted and his identification is tainted."

73. The court went on to find that - while the criminal defendant has no burden to provide evidence – the Plaintiff provided substantial exculpatory evidence including: 1) the handgun in possession of Chavez months after the shooting; 2) the similar appearance of Plaintiff and Chavez; 3) and the testimony of multiple alibi witnesses.

74. Plaintiff was released from custody on February 18, 2017.

75. As a direct and proximate result of the objectively unreasonable, willful, wanton, and malicious actions of the Defendants, Plaintiff suffered without limitation the following injuries and damages:

    a. Violation of his constitutional rights under the Fourth, Fifth, and Fourteenth Amendments;

    b. Loss of his physical liberty;

    c. Physical abuse;

    d. Psychological abuse and mental coercion;

    e. Mental and emotional trauma; and

    f. Monetary and economic loss.

At all relevant times, Calumet City, through its defendant agents involved in the arrest and prosecution of Plaintiff, knew or should have known that Plaintiff had not committed any acts for which he could be properly charged with attempt murder and aggravated battery with a firearm.

### Count I – Due Process violation for obtaining false statements/ filing false reports/Brady violations
### 42 U.S.C. § 1983

1. Each paragraph of this Complaint is incorporated as if restated fully herein.

2. As described more fully above, Defendants, while acting individually, jointly, and in conspiracy with other unnamed individuals, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional right to a fair trial by the following:

    a. Deliberately withheld exculpatory evidence including the ISP forensic reports that either exonerated Plaintiff or implicated another individual as the shooter;

    b. Deliberately withheld exculpatory evidence including eyewitness statements that either exonerated Plaintiff or implicated another individual as the shooter;

    c. Deliberately prevented witnesses from viewing photograph and/or physical lineups that included suspect Nicholas Chavez who matched the description of the shooter(s);

    d. Deliberately provided information to witnesses that was beyond their personal knowledge in an attempt to bolster their statements including the alleged identity and location of the shooter;

    e. Deliberately fabricating reports and other evidence in an attempt to implicate Plaintiff as the shooter;

    f. Deliberately destroyed evidence and witness statements in an attempt to implicate Plaintiff as the shooter;

    g. Deliberately and coercively obtained false statements and identifications from Eduardo and Yadira Rostro.

3. As a result of these violations, the Defendants mislead and misdirected the criminal prosecution of Plaintiff. Absent the misconduct, the prosecution of Plaintiff could not and would

not have been pursued.

4. The Defendants continued to mislead and misdirect the criminal prosecution ….

5. As a result of these violations, Plaintiff suffered without limitation violations of his constitutional rights, loss of liberty, monetary expenses, emotional distress, and other injuries.

6. The misconduct described in this Count I was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

WHEREFORE, Plaintiff demands compensatory damages, jointly and severally from Defendants, and, because these Defendants acted in a malicious, willful and/or wanton manner toward Plaintiff, for punitive damages, plus the costs of this action and whatever additional relief this Court deems equitable and just.

### Count II - Supervisor Liability
### 42 U.S.C. § 1983

1. Each paragraph of this Complaint is incorporated as if restated fully herein.

2. The Supervising Defendant Officers knew about the unconstitutional conduct of the Defendant Officers and facilitated it, approved it, condoned it, or turned a blind eye for fear of what they might see.

3. The Supervising Defendant Officers failed to adequately train and supervise the Defendant Officers in constitutionally adequate law enforcement practices including authoring police reports, questioning witnesses and obtaining witness statements, thereby encouraging and/or permitting the Defendant Officers to deprive Plaintiff of this constitutional rights by the following:

   a. Deliberately withheld exculpatory evidence including the ISP forensic reports that either exonerated Plaintiff or implicated another individual as the shooter;

   b. Deliberately withheld exculpatory evidence including eyewitness statements that either exonerated Plaintiff or implicated another individual as the shooter;

   c. Deliberately prevented witnesses from viewing photograph and/or physical lineups

        that included suspect Nicholas Chavez who matched the description of the shooter(s);

    d.    Deliberately provided information to witnesses that was beyond their personal knowledge in an attempt to bolster their statements including the alleged identity and location of the shooter;

    e.    Deliberately fabricating reports and other evidence in an attempt to implicate Plaintiff as the shooter;

    f.    Deliberately destroyed evidence and witness statements in an attempt to implicate Plaintiff as the shooter;

    g.    Deliberately and coercively obtained false statements and identifications from Eduardo and Yadira Rostro.

5.    As a result of this violation, Plaintiff suffered without limitation violations of his constitutional rights, loss of liberty, monetary expenses, emotional distress, and other injuries.

6.    The misconduct described in this Count II was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

    WHEREFORE, Plaintiff demands compensatory damages, jointly and severally from Defendants, and, because these Defendants acted in a malicious, willful and/or wanton manner toward Plaintiff, for punitive damages, plus the costs of this action and whatever additional relief this Court deems equitable and just.

## Count III – Conspiracy
## 42 U.S.C. §§ 1985, 1986

1.    Each of the paragraphs of this Complaint in incorporated as if restated fully herein.

2.    As described more fully above, the Defendant Officers, while acting individually, jointly, and in conspiracy with ASA Coppleson and other unnamed individuals, as well as under color of law and within the scope of their employment with Calumet City Police Department, reached an understanding, engaged and continued to engage in a course of conduct, and otherwise jointly acted and/or conspired among and between themselves to falsely imprison Plaintiff and/or to

continue that imprisonment, to maliciously prosecute Plaintiff and/or continue that prosecution, and to intentionally inflict severe emotional distress on Plaintiff.

3. Defendants' and their co-conspirators' overt acts, as set forth above, which were committed jointly and/or while conspiring together were with the knowledge and purpose of depriving Plaintiff, who is Hispanic, of the equal protection of the laws and/or of equal privilege and immunities under the law.

4. The Defendants named above also deprived Plaintiff of his right to equal protection of the laws under the Fourteenth Amendment and 42 U.S.C. § 1985.

5. Additionally or alternatively, Defendants knowing that the above §1985 conspiracy to falsely arrest and prosecute Plaintiff was about to be committed, and having the power to prevent or aid in preventing the commission of the acts in furtherance of that conspiracy, neglected and/or refused so to do, in violation of 42 U.S.C. § 1986.

WHEREFORE, Plaintiff demands compensatory damages, jointly and severally from Defendants, and, because these Defendants acted in a malicious, willful and/or wanton manner toward Plaintiff, for punitive damages, plus the costs of this action and whatever additional relief this Court deems equitable and just.

### Count IV – Malicious Prosecution
### State Law Claim

1. Each paragraph of this Complaint is incorporated as if restated fully herein.

2. As described more fully above, the Defendant Officers, while acting individually, jointly, and in conspiracy with other unnamed individuals, as well as under color of law and within the scope of their employment, maliciously, willfully, and wantonly commenced and continued criminal proceedings against Plaintiff based on upon the following:

    a.    Deliberately withheld exculpatory evidence including the ISP forensic reports that either exonerated Plaintiff or implicated another individual as the shooter;

    b.    Deliberately withheld exculpatory evidence including eyewitness statements that either exonerated Plaintiff or implicated another individual as the shooter;

    c.    Deliberately prevented witnesses from viewing photograph and/or physical lineups that included suspect Nicholas Chavez who matched the description of the shooter(s);

    d.    Deliberately provided information to witnesses that was beyond their personal knowledge in an attempt to bolster their statements including the alleged identity and location of the shooter;

    e.    Deliberately fabricating reports and other evidence in an attempt to implicate Plaintiff as the shooter;

    f.    Deliberately destroyed evidence and witness statements in an attempt to implicate Plaintiff as the shooter;

    g.    Deliberately and coercively obtained false statements and identifications from Eduardo and Yadira Rostro.

3. Defendant Officers maliciously, willfully, and wantonly commenced and continued criminal proceedings against Plaintiff while knowingly lacking probable cause to commence the criminal case.

4. The Defendant Officers continued to mislead and misdirect the criminal prosecution of Plaintiff during the pendency of his detainment at Cook County Department of Corrections and Illinois Department of Corrections.

5. The legal proceedings against Plaintiff were terminated in his favor in a manner indicative of innocence.

6. As a result of this violation, Plaintiff suffered without limitation violations of his state rights, loss of liberty, monetary expenses, emotional distress, and other injuries.

    WHEREFORE, Plaintiff demands compensatory damages, jointly and severally from Defendants, and, because these Defendants acted in a malicious, willful and/or wanton manner

17

toward Plaintiff, for punitive damages, plus the costs of this action and whatever additional relief this Court deems equitable and just.

### Count V - Intentional Infliction of Emotional Distress
### State Law Claim

1. Each paragraph of this Complaint is incorporated as if restated fully herein.

2. As described more fully above, the Defendant Officers, while acting individually, jointly, and in conspiracy with other unnamed individuals, as well as under color of law and within the scope of their employment, their conduct was extreme and outrageous and went beyond all bounds of human decency.

3. Defendant Officers participated in the extreme and outrageous conduct described above with the intention to inflict severe emotional distress upon Plaintiff or knew that there was a high probability that their conduct would do so.

4. The Defendant Officers continued to mislead and misdirect the criminal prosecution of Plaintiff during the pendency of his detainment at Cook County Department of Corrections and Illinois Department of Corrections.

5. As a direct and proximate result of the extreme and outrageous conduct described above, Plaintiff suffered extreme emotional distress.

WHEREFORE, Plaintiff demands compensatory damages, jointly and severally from Defendants, and, because these Defendants acted in a malicious, willful and/or wanton manner toward Plaintiff, for punitive damages, plus the costs of this action and whatever additional relief this Court deems equitable and just.

### COUNT VI – Conspiracy
### State Law Claim

1. Each of the paragraphs of this Complaint in incorporated as if restated fully herein.

2. As described more fully above, the Defendant Officers, while acting individually, jointly, and in conspiracy with ASA Coppleson and other unnamed individuals, as well as under color of law and within the scope of their employment, reached an understanding, engaged and continued to engage in a course of conduct, and otherwise jointly acted and/or conspired among and between themselves to falsely imprison Plaintiff and/or to continue that imprisonment, to maliciously prosecute Plaintiff and/or continue that prosecution, and to intentionally inflict severe emotional distress on Plaintiff.

3. Defendants' and their co-conspirators' overt acts, as set forth above, which were committed jointly and/or while conspiring together to falsely imprison, maliciously prosecute, and intentionally inflict emotional distress on the Plaintiff, constitute the tort of conspiracy as set forth above.

4. As a result of this violation, Plaintiff suffered without limitation violations of his state rights, loss of liberty, monetary expenses, emotional distress, and other injuries.

WHEREFORE, Plaintiff demands compensatory damages, jointly and severally from Defendants, and, because these Defendants acted in a malicious, willful and/or wanton manner toward Plaintiff, for punitive damages, plus the costs of this action and whatever additional relief this Court deems equitable and just.

### Count VII - Respondeat Superior
### State Law Claim

1. Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

2. As described more fully above, the Defendant Officers, while acting individually, jointly, and in conspiracy with other unnamed individuals, as well as under color of law and within the scope of their employment as members of the Calumet City Police Departments.

3. Calumet City is liable as principal for all torts committed by their agents.

WHEREFORE, Plaintiff demands compensatory damages, jointly and severally from Defendants, and, because these Defendants acted in a malicious, willful and/or wanton manner toward Plaintiff, for punitive damages, plus the costs of this action and whatever additional relief this Court deems equitable and just.

### Count VIII - Indemnification
### State Law Claim

1. Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

2. As described more fully above, the Defendant Officers, while acting individually, jointly, and in conspiracy with other unnamed individuals, as well as under color of law and within the scope of their employment as members of the Calumet City Police Department.

3. Should the Defendant Officers be found liable on any one of the federal claims alleged herein, pursuant to the Illinois Tort Immunity Act, 745 ILCS 10/9-102, Defendants Calumet City is liable for any judgments for compensatory damages arising in this case from the actions of the Defendant Officers.

                        Respectfully Submitted,

                        Nakiya Moran

          By:    */s/ Michael L. Gallagher*
                  One of His Attorneys

David C. Wise
Michael L. Gallagher
BURKE WISE MORRISSEY & KAVENY LLC
161 N. Clark Street, Suite 2240
Chicago, IL 60601
312.580.2040
Firm I.D. 46603