IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NAKIYA MORAN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17 C 2027 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| CALUMET CITY, CALUMET CITY OFFICER | ) | |
| MITCHELL GROWE, CALUMET CITY | ) | |
| OFFICER KEVIN RAPACZ, CALUMET CITY | ) | |
| CST MARCO GLUMAC, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Nakiya Moran has brought an eight count wrongful conviction amended complaint against Calumet City, Calumet City Police Officers Mitchell Growe and Kevin Rapacz, and Calumet City Evidence Technician Marco Glumac. Count I alleges a due process violation based on defendants' alleged violation of Brady v. Maryland, 373 U.S. 83 (1963), by failing to disclose to plaintiff certain exculpatory evidence. Count II purports to allege a claim for supervisor liability against the individual defendants. Count III alleges a civil conspiracy under 42 U.S.C. §§ 1985 and 1986. Counts IV through VI are state law claims for malicious prosecution, intentional infliction of emotional distress ("IIED"), and conspiracy. Counts VII and VIII are brought against Calumet City, alleging respondeat superior liability under the state law claims, and indemnification under the Illinois Tort Immunity Act, 745 ILCS 10/9-102. All defendants have moved to dismiss Counts II (supervisory liability), III (federal civil conspiracy) and V (IIED). For the reasons described below, the motions are granted.

## BACKGROUND

According to the amended complaint, at approximately 9:00 p.m. on August 22, 2006, an unknown assailant fired approximately nine shots at Tomas Rostro, Edwardo Rostro, Edwin Rostro, Flora Rostro, Yadira Rostro, and Desiree Dolata. Tomas, Yadira and Desiree were struck and injured. Tomas, Edwardo, and Yadira were all members of the Latin Kings street gang.

Plaintiff was arrested and charged with the shooting. He was tried and convicted by a jury on August 19, 2006. The conviction was based largely on Yadira's testimony that she saw plaintiff with a gun. Plaintiff had presented testimony from Amber Mendoza and Elizabeth Outlaw that he had been at Amber's house from noon until approximately 9:00 p.m. on the day of the shooting. At that time Amber's mother drove the two girls and plaintiff to his home in Lansing, Illinois, approximately 10 to 15 minutes away, suggesting that it was "physically impossible" for plaintiff to be at the scene of the crime at 9:00 p.m.

According to the amended complaint, Glumac arrived at the scene and collected nine 9mm Luger cartridge casings. Growe and Rapacz also arrived and created false police reports that both Edwardo and Yadira identified plaintiff as the shooter. Both defendants then questioned Yadira and Edwardo at the hospital, subjecting them to a photo array lineup that improperly suggested plaintiff was the shooter. On August 24, 2006, Growe and Rapacz arrested plaintiff at his home in Lansing. Plaintiff provided a written statement to the State's Attorney that he was at his home by 9:00 p.m. and denied shooting anyone. He was convicted on August 24, 2009, and sentenced on December 7, 2009, to 62 years incarceration.

On October 22, 2006, Hammond, Indiana police responded to a "shots fired" dispatch in the area of 1329 Calumet Avenue. The officers found Juan Macias shot. Macias was a Latin King gang member. The officers recovered five 9mm luger cartridges.

Four days later, on October 26, 2006, Chicago police responded to a "shots fired" dispatch in the area of 10700 S. State Line Road. The officers "curbed a vehicle" in which Nicholas Chavez was sitting in the front passenger seat. The officers observed Chavez attempt to conceal a 9 mm semi-automatic pistol. Chavez admitted he was a Latin Dragon gang member and that he had just finished shooting at rival Latin King gang members. Chavez was arrested. The gun was submitted to the Illinois State Police Forensic Science Laboratory to determine if it matched for use in any other shootings. Chavez matched the plaintiff's physical description.

On January 1, 2009, State Forensic Scientist Leah Kane told Glumac that the cartridges recovered in the Rostro shooting for which plaintiff was convicted were a possible match to the gun recovered from Chavez. Kane repeatedly over the next few months requested that Glumac resubmit the Rostro cartridges for further analysis. Glumac finally complied on April 15, 2009. On May 11, 2009, Illinois Sate Police Forensic Scientist Jeffrey Parise contacted Cook County State's Attorney Cordelia Coppleson, the lead prosecutor in plaintiff's case. Parise informed Coppleson that the Rostro cartridges were a likely match to the Chavez gun. One week later, Parise told Coppleson that the cartridges were a positive match to the Chavez gun and faxed Coppleson the 28-page report. On May 22, Kane told Glumac of the match. Glumac asked for and received the full report on June 9, 2009, three months prior to plaintiff's trial. Neither Glumac nor Coppleson disclosed the match to plaintiff or his attorney prior to plaintiff's first trial.

On November 10, 2010, eighteen months after her receipt of the reports, Coppleson sent a letter to State Appellate Defender Alan Goldberg informing him of the reports and match. In her letter, Coppleson claimed to have first learned of the match in October 2010. Plaintiff's conviction was affirmed on February 18, 2013. Plaintiff's appeal did not address a Brady claim.

On March 11, 2013, plaintiff filed a post-conviction petition based on defendants' withholding exculpatory evidence in violation of Brady. At the hearing, Coppleson testified that she first learned of the match in October 2010 despite Illinois State Police and Calumet City Police Department documents confirming she was informed of the match by May 2009. Glumac admitted that he was told on May 22, 2009, of the results and did not send the reports to plaintiff. The court granted the post-conviction petition on June 26, 2015. Plaintiff was retried in November 2016 and found not guilty at a bench trial on February 17, 2017.

## DISCUSSION

Defendants have moved to dismiss Counts II, III and V, for failure to state a claim. Such a motion challenges the sufficiency of the complaint, not its merits. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). The court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. Sprint Spectrum L.P. v. City of Carmel, Ind., 361 F.3d 998, 1001 (7th Cir. 2004). The complaint must allege sufficient facts that, if true, would raise a right to relief above the speculative level, showing that the claim is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 549, 555 (2007). To be plausible on its face the complaint must plead facts sufficient for the court to draw the reasonable inference that the plaintiff is liable for the alleged misconduct. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In Count II, plaintiff alleges a claim for "supervisor liability." To allege supervisor liability, plaintiff must allege facts that plausibly suggest that "the supervisor was personally involved in the constitutional violation," meaning that the supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he] might see." Gill v. City of Milwaukee, 850 F.3d 335, 344 (7th Cir. 2017).

In the instant case, as defendants correctly argue, plaintiff has not alleged that any of the individual defendants had supervisor authority over any of the other defendants or alleged wrongdoers. There is no allegation in the complaint suggesting that any defendant failed to supervise anyone. Perhaps recognizing this deficiency, plaintiff argues that he has until February 17, 2019, two years after he was found not guilty, to name the supervisors subject to supervisor liability. Even if this is true, as it stands now, the amended complaint fails to allege supervisor liability against any currently named defendant. Consequently, the motion to dismiss Count II is granted.

In Count III, plaintiff alleges civil conspiracy under 42 U.S.C. §§ 1985 and 1986. Defendants have moved to dismiss arguing that the complaint fails to allege any class-based discrimination as required for claims brought under § 1985, and because § 1986 liability is derivative, dismissal of the § 1985 claim requires dismissal of the § 1986 claim as well. Rogers v. Lincoln Towing Serv., Inc., 771 F.2d 194, 203 (7th Cir. 1985). In addition, defendants argue that plaintiff's claim under § 1986 is time-barred by the one year statute of limitations contained in that section.

In his response brief, plaintiff has withdrawn his § 1985 conspiracy claim. Because his § 1986 claim is derivative to a § 1985 claim, the court considers the § 1986 claim to be withdrawn as well.

Finally, in Count V plaintiff asserts a state law claim for IIED. Defendants move to dismiss this claim arguing that it is barred by the one year statute of limitations in the Tort Immunity Act, 745 ILCS 10/8-101(a). Defendants argue that a claim for IIED in the course of arrest and prosecution accrues on the date of arrest. Bridewell v. Eberle, 730 F.3d 672, 678 (7th Cir. 2013).

As plaintiff notes, however, the plaintiff in Bridewell had never been convicted of the charge that led to the IIED claim, meaning that the court did not need to review the claim in light of Heck v. Humphrey, 512 U.S. 477 (1994), which holds generally that if a claim impugns the validity of a criminal conviction it does not accrue until the conviction is overturned or otherwise set aside.

This court addressed this precise issue in Maxson v. Dwyer, 2017 WL 1493712 *6 (N.D. Ill. April 26, 2017), concluding that when an IIED claim necessarily attacks the validity of the conviction, as it does in the instant case, the IIED claim does not accrue until the conviction is set aside. Plaintiff's conviction was set aside, however, on June 26, 2015, when the state court granted plaintiff's post-conviction petition. Because the instant suit was filed on March 15, 2017, almost two years later, the claim is time-barred.

## **CONCLUSION**

For the reasons stated above defendants' motions to dismiss Counts II, III and V, (Docs. 28 and 30) are granted.

**ENTER:**   **August 16, 2017**

_____
**Robert W. Gettleman**
**United States District Judge**